UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>EMEKA ILOBA,<br><br>Defendant | Criminal No. 21cr10233<br><br>Violations:<br><br><u>Count One</u>: Conspiracy to Commit Bank Fraud<br>(18 U.S.C. § 1349)<br><br><u>Count Two</u>: Aggravated Identity Theft; Aiding and Abetting<br>(18 U.S.C. §§ 1028A(a)(1) and 2)<br><br><u>Forfeiture Allegation</u>:<br>(18 U.S.C. § 982(a)(2)) |

## INFORMATION

At all times relevant to this Information:

### General Allegations

1. Defendant EMEKA ILOBA was a resident of Massachusetts.

2. TD Bank, Santander Bank, Bank of America, and Citizens Bank were financial institutions with offices located throughout the United States, including in the District of Massachusetts, the accounts of which were insured by the Federal Deposit Insurance Corporation.

3. PLS Check Cashing Store ("PLS") was a financial services business that allowed customers to conduct financial transactions, such as check cashing, for a fee.

4. Co-conspirator Akeem Chambers was employed as a teller at a Santander Bank branch located in the Uphams Corner area of Dorchester, Massachusetts (the "Uphams Corner Branch").

5. Co-conspirator Valnardia Novas was employed as a teller at a TD Bank branch located in Peabody, Massachusetts (the "Peabody Branch").

6. Co-conspirator Dave Guillaume was employed as a manager at a PLS location in Medford, Massachusetts (the "Medford PLS").

7. Antonio Niati, Fesnel Lafortune, Emelyn Clough, and CC-1 were individuals who participated in the fraud scheme.

## Overview of the Conspiracy

8. Between approximately April 2017 and March 2018, ILOBA conspired with Chambers, Novas, Guillaume, Niati, Lafortune, Clough, CC-1, and others known and unknown to the United States Attorney, to withdraw funds from accounts under the custody and control of various financial institutions, and to negotiate the fraudulently obtained funds through accounts at other financial institutions in the names of fictitious business entities.

## Object and Purpose of the Conspiracy

9. The object of the conspiracy was to commit bank fraud by employing false and fraudulent pretenses and representations to obtain money and property under the custody and control of various financial institutions. The purpose of the conspiracy was to enrich ILOBA and his co-conspirators.

## Manner and Means of the Conspiracy

10. Among the manner and means by which ILOBA, Chambers, Novas, Guillaume, Niati, Lafortune, Clough, CC-1, and others known and unknown to the United States Attorney carried out the conspiracy and the scheme to defraud were the following:

    a. Using fraudulent identification documents, among other means, to withdraw money from customers' accounts at various financial institutions;

    b. Withdrawing money from the customers' accounts in the form of checks, cash, and wire transfers;

c. Negotiating the fraudulently obtained funds through accounts at other financial institutions in the names of fictitious business entities.

Acts in Furtherance of the Conspiracy

11. From in or about April 2017 through in or about March 2018, ILOBA, Chambers, Novas, Guillaume, Niati, Lafortune, Clough, CC-1, and others known and unknown to the United States Attorney committed and caused to be committed the following acts, among others, in furtherance of the conspiracy:

**IMS Intellibound, Inc. and Haumann Construction, Inc.**

12. In or about the spring of 2017, ILOBA introduced Niati to CC-1.

13. Beginning in or about April 2017, at CC-1's direction, Niati recruited Lafortune to open bank accounts in the names of fictitious business entities using fraudulent identification documents.

14. To facilitate this, Niati obtained a photo of Lafortune and sent it to CC-1 so that CC-1 could create fraudulent identification documents bearing Lafortune's photo. CC-1 later mailed the fraudulent identification documents, along with incorporation documents for fictitious business entities, to ILOBA. ILOBA provided the documents to Niati, who, in turn, provided them to Lafortune.

15. At Niati's direction, Lafortune then opened business accounts at TD Bank in the name of a fictitious entity, IMS Intellibound, Inc. ("IMS Intellibound"), using a fraudulent identification document bearing his own photo but the personal identifiers of another, real individual, and the business incorporation documents sent by CC-1.

16. Around the same time, Niati recruited Chambers to facilitate fraudulent withdrawals from the accounts of Santander Bank customers.

17. On or about April 6, 2017 and April 7, 2017, an unidentified co-conspirator entered the Uphams Corner Branch, approached Chambers, falsely identified himself as a trustee of a Santander Bank customer's irrevocable trust account, presented Chambers with a fraudulent identification document in the trustee's name, and requested withdrawals, in the form of official bank checks and cash, totaling more than $294,000, from the account. Chambers facilitated the requested withdrawals, knowing that the unidentified co-conspirator was not, in fact, a trustee of the account.

18. On or about April 27, 2017, the unidentified co-conspirator returned to the Uphams Corner Branch, approached Chambers, falsely identified himself as another Santander Bank customer, presented Chambers with a fraudulent identification document in the customer's name, and requested withdrawals, in the form of official bank checks and cash, totaling approximately $350,000 from the customer's revocable trust account. Chambers facilitated the requested withdrawals, knowing that the unidentified co-conspirator was not, in fact, the Santander Bank customer who held this account.

19. As part of the April 27, 2017 withdrawals, the unidentified co-conspirator obtained an official bank check in the amount of $175,500 made payable to IMS Intellibound. Niati provided this check to Lafortune to be deposited into one of the accounts Lafortune had opened at TD Bank in the name of IMS Intellibound. After depositing the check, Lafortune made a series of cash withdrawals from the IMS Intellibound accounts.

20. In or about June 2017, Lafortune used a second false identity of a real individual to open business accounts at TD Bank and Bank of America in the name of another fictitious entity, Haumann Construction, Inc. ("Haumann Construction"). After Lafortune opened these accounts, one or more of the co-conspirators caused funds fraudulently obtained from customers' accounts

at other financial institutions, totaling approximately $210,000, to be wired into them. Lafortune then made withdrawals, in the form of cash and checks, from the Haumann Construction accounts.

**Maritime System Investment Inc.**

21. On or about June 24, 2017, at ILOBA's direction, Clough opened business accounts at Citizens Bank in the name of a fictitious entity, Maritime System Investment Inc. ("Maritime"), using a counterfeit Pennsylvania driver's license bearing the alias Laurence Williams.

22. In or about August 2017, ILOBA and Clough recruited Novas to facilitate fraudulent withdrawals from TD Bank accounts.

23. On or about September 3, 2017, September 17, 2017, and October 1, 2017, an unidentified co-conspirator entered the Peabody Branch, approached Novas, falsely identified himself as a TD Bank customer ("Victim 1"), in at least two instances presenting Novas with a fraudulent identification document in the customer's name, and requested withdrawals, in the form of official bank checks and cash, totaling nearly $383,000 from the customer's home equity line of credit ("HELOC") account. Novas facilitated the requested withdrawals, knowing that the identification document in the TD Bank customer's name was fraudulent.

24. On or about September 13, 2017, at ILOBA's direction, Clough registered as a customer at the Medford PLS using the alias Laurence Williams, identifying Williams as a partial owner of Maritime, and the same counterfeit Pennsylvania driver's license she had used to open the Maritime accounts at Citizens Bank.

25. On or about September 18, 2017, another unidentified co-conspirator entered the Peabody Branch, approached Novas, falsely identified himself as another TD Bank customer, presented Novas with a fraudulent identification document in the customer's name, and requested withdrawals, in the form of official bank checks, totaling $123,000 from the customer's HELOC

account. Novas facilitated the requested withdrawals, knowing that the identification document in the TD Bank customer's name was fraudulent.

26. On or about September 13, 2017, September 18, 2017, September 26, 2017, and September 29, 2017, one or more of the co-conspirators cashed checks – all of which were drawn on or otherwise funded by the TD Bank customers' HELOC accounts and made payable to either Maritime or Laurence Williams – totaling more than $98,000 at the Medford PLS under the customer profile registered by Clough. Guillaume processed the September 26, 2017 and September 29, 2017 transactions.

27. Between approximately September 2017 and November 2017, Clough deposited or attempted to deposit other fraudulently obtained checks, totaling more than $122,000, into the accounts she had opened at Citizens Bank in the name of Maritime.

28. On or about November 29, 2017, Guillaume unsuccessfully tried to process a fraudulently obtained check in the amount of $105,000 payable to Maritime at the Medford PLS.

29. Over the course of the conspiracy, one or more of the co-conspirators depleted the victim funds that were deposited into the Citizens Bank accounts Clough opened in the name of Maritime. For example, on or about November 1, 2017, one or more of the co-conspirators used one of the accounts to purchase an official bank check in the amount of $20,000 made payable to Laurence Williams, and cashed the check at a PLS in Revere, Massachusetts.

**Lincorn Foresight Construction Inc. and Banner Seil Seltzer Reair Corp.**

30. In or about December 2017, Guillaume, in coordination with ILOBA, opened business accounts at Santander Bank and Citizens Bank in the name of a fictitious entity, Lincorn Foresight Construction Inc. ("Lincorn"), using a fraudulent driver's license bearing the alias James Jackson.

6

31. Around the same time, Guillaume also opened business accounts at TD Bank and Citizens Bank in the name of another fictitious entity, Banner Seil Seltzer Reair Corp. ("Banner"), using the alias Jeffrey Seltzer.

32. On various dates between approximately December 2017 and March 2018, one or more of the co-conspirators used fraudulent identification documents to make unauthorized withdrawals, in the form of official bank checks and cash, from customers' accounts at TD Bank, Santander Bank, and Bank of America. As part of these withdrawals, the co-conspirators obtained three official bank checks – one in the amount of $157,243.26, one in the amount of $180,000, and one in the amount of $230,000 – made payable to Lincorn and one in the amount of $120,000 made payable to Banner.

33. After these fraudulent withdrawals, Guillaume and one or more of the other co-conspirators deposited or attempted to deposit the checks made payable to Lincorn and Banner into the accounts opened by Guillaume, and then made withdrawals from those accounts.

34. For example, on or about March 1, 2018, an unidentified co-conspirator went to a Citizens Bank branch in Cambridge, Massachusetts and deposited the $230,000 check into the account Guillaume had opened in the name of Lincorn.

35. On or about March 6, 2018, Guillaume entered the same Citizens Bank branch in Cambridge, asked a teller about the status of the $230,000 deposit, and presented the teller with a counterfeit California driver's license bearing the alias James Jackson, which Guillaume left behind when he departed the branch.

36. On or about March 7, 2018, at ILOBA's direction, Guillaume returned to the same Citizens Bank branch, again inquired about the status of the $230,000 deposit, and attempted to retrieve the driver's license he had left behind the previous day.

# COUNT ONE
## Conspiracy to Commit Bank Fraud
## (18 U.S.C. § 1349)

The United States Attorney charges:

37. The United States Attorney re-alleges and incorporates by reference paragraphs 1 through 36 of this Information.

38. From in or about April 2017 through in or about March 2018, in the District of Massachusetts and elsewhere, the defendant,

EMEKA ILOBA,

conspired with others known and unknown to the United States Attorney to commit bank fraud, that is, to knowingly execute, and attempt to execute, a scheme and artifice to defraud federally insured financial institutions, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of such financial institutions, by means of materially false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344.

All in violation of Title 18, United States Code, Section 1349.

## COUNT TWO
## Aggravated Identity Theft; Aiding and Abetting
## (18 U.S.C. §§ 1028A(a)(1) and 2)

The United States Attorney further charges:

39. The United States Attorney re-alleges and incorporates by reference paragraphs 1 through 36 of this Information.

40. On or about September 3, 2017, in the District of Massachusetts and elsewhere, the defendant,

EMEKA ILOBA,

did aid and abet the knowing transfer, possession, and use of, without lawful authority, a means of identification of another person, to wit, the name of Victim 1, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), that is, bank fraud, in violation of Title 18, United States Code, Section 1344.

All in violation of Title 18, United States Code, Sections 1028A(a)(1) and 2.

# FORFEITURE ALLEGATION
(18 U.S.C. § 982(a)(2)(A))

41. Upon conviction of the offense in violation of Title 18, United States Code, Section 1349, set forth in Count One of this Information, the defendant,

EMEKA ILOBA,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2)(A), any property constituting, or derived from, proceeds obtained directly or indirectly, as a result of such offense.

42. If any of the property described in Paragraph 41 above as being forfeitable pursuant to Title 18, United States Code, Section 982(a)(2), as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 41 above.

All pursuant to Title 18, United States Code, Section 982(a)(2).

NATHANIEL R. MENDELL
ACTING UNITED STATES ATTORNEY

By: _____
LESLIE A. WRIGHT
Assistant United States Attorney

Date: July 30, 2021